## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMERICANS FOR PROSPERITY
FOUNDATION; AMERICANS FOR
PROSPERITY

        *Plaintiffs*,

   v.

ANTHONY ALBENCE, in his official
capacity as State Election Commissioner
for the State of Delaware,

KATHY JENNINGS, in her official
capacity as Attorney General of
the State of Delaware,

        *Defendants*.

Case No.

## COMPLAINT

### NATURE OF THE CASE

1.     The First Amendment prohibits the government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

2.     Included in the First Amendment's protection is the right of individuals to freely associate with others. The Supreme Court of the United States has long held that compelled disclosure of an advocacy organization's members violates that right. *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958).

3.     In 2021, the Supreme Court confirmed that state laws requiring the disclosure of an organization's donors are subject to "exacting scrutiny" under the First Amendment. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021).

1

4.    Plaintiff Americans for Prosperity Foundation ("AFPF") is a nonprofit organization with donors across the country, including in Delaware. AFPF regularly engages in advocacy and education concerning issues of public policy, including communications in various forms that may refer to incumbent officials who may also be candidates for office.

5.    Plaintiff Americans for Prosperity ("AFP") is a nonprofit organization with donors across the country, including in Delaware. Although AFP sometimes engages in express advocacy, it most regularly engages in issue advocacy, including communications in various forms that may refer to incumbent officials who may also be candidates for office.

6.    Plaintiffs intend to publish non-express advocacy, issue-based communications that will refer to specific officeholders who are also candidates for election in Delaware in advance of the 2026 and subsequent primary and general elections. Upon information and belief, however, if Plaintiffs published such communications, the Delaware Elections Disclosure Act, codified at 15 Del. C. § 8001, et seq., and specifically, 15 Del. C. § 8031(a)(3) ("Delaware's disclosure requirements"), would require them to file reports disclosing the names and addresses of their donors who have donated more than $100 dating back several years.

7.    Plaintiffs reasonably fear that if they fail to file these reports disclosing the names and addresses of their donors, they will be subject to enforcement actions, investigations, and penalties initiated or imposed by Defendants and their agents.

8.    Delaware's disclosure requirements violate the right to private association, chill free speech and association, and overstep the government's legitimate disclosure interests, all in violation of the First Amendment.

9.      Plaintiffs therefore bring this action to obtain a declaration that Delaware's disclosure requirements are unlawful on their face and as applied to Plaintiffs, and to enjoin enforcement of those requirements.

**PARTIES**

10.      Plaintiff Americans for Prosperity Foundation is a Delaware nonprofit corporation headquartered in Virginia. It is exempt from taxation pursuant to Section 501(c)(3) of the Internal Revenue Code. AFPF funds its activities by raising charitable contributions from donors across the country, including in Delaware.

11.      Plaintiff Americans for Prosperity is a Washington, D.C. nonprofit corporation headquartered in Virginia. It is exempt from taxation pursuant to Section 501(c)(4) of the Internal Revenue Code. AFP funds its activities by raising contributions from donors across the country, including in Delaware.

12.      Defendant Anthony Albence is the State Election Commissioner ("Commissioner") for the State of Delaware and is empowered to issue regulations with the force of law regarding Delaware election laws pursuant to 15 Del. C. § 302. As Commissioner, Defendant Albence also has the power to levy fines when "a report [] is not filed, not filed on time, or is filed on time but incomplete." 15 Del. C. § 8044(a).

13.      Defendant Kathy Jennings is the Attorney General of Delaware and is empowered to "investigate matters involving the public peace, safety and justice" in the State of Delaware. 29 Del. C. § 2504(4). Under 15 Del. C. § 8044(g), "the [Reports Appeals Subcommittee of the State Board of Elections] shall notify the Office of the Attorney General" of parties which fail to file required reports. Failure to file such reports constitutes a class A misdemeanor. 15 Del. C. § 8043(c).

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) and (b)(2).

**FACTS**

**Delaware's Regulation of Electioneering Communications and Third-Party Advertisements**

16.     The Delaware Elections Disclosure Act states that "[a]ny person . . . who makes an expenditure for any third-party advertisement that causes the aggregate amount of expenditures for third-party advertisements made by such person to exceed $500 during an election period shall file a third-party advertisement report with the Commissioner." 15 Del. C. § 8031(a). A "person" includes "any individual, corporation, company, incorporated or unincorporated association, general or limited partnership, society, joint stock company, and any other organization or institution of any nature." 15 Del. C. § 8002(17).

17.     A "third-party advertisement" includes "an electioneering communication," 15 Del. C. § 8002(27), which is defined as any communication "by any individual or other person (other than a candidate committee or a political party) that: 1. [r]efers to a clearly identified candidate; and 2. [i]s publicly distributed within 30 days before a primary election or special election, or 60 days before a general election to an audience that includes members of the electorate for the office sought by such candidate." 15 Del. C. § 8002(10)(a).

18.     The "third-party advertisement report" must be "filed under penalty of perjury" and include "[t]he full name and mailing address of each person who has made contributions to such person during the election period in an aggregate amount or value in excess of $100; the total of all contributions from such person during the election period, and the amount and date of all contributions from such person during the reporting period." 15 Del. C. § 8031(a)(3). If the

contributor is not an individual, the report must include "the full name and mailing address of . . . [a]ny person who, directly or otherwise, owns a legal or equitable interest of 50 percent or greater in such entity; and . . . [o]ne responsible party, if the aggregate amount of contributions made by such entity during the election period exceeds $1,200." 15 Del. C. § 803l(a)(4).

19.    "Election period" has various definitions under Delaware law. 15 Del. C. § 8002(11).

20.    "For a person who makes an expenditure for a third-party advertisement, the election period shall begin and end at the same time as that of the candidate identified in such advertisement." 15 Del. C. § 8002(11)(d). For candidates running for reelection for the office to which they were elected in the most recent election, the election period is "the period beginning on January 1 immediately after the most recent such election, and ending on the December 31 immediately after the general election at which the candidate seeks reelection to the office." 15 Del. C. § 8002(1l)(a)(1). And for candidates running for an office which they do not hold, the election period is "the period beginning on the day on which the candidate first receives any contribution from any person (other than from the candidate or from the candidate's spouse) in support of that candidate's candidacy for the office, and ending on the December 31 immediately after the general election at which the candidate seeks election to the office." 15 Del. C. § 8002(11)(a)(3).

21.    Delaware's state senators and statewide executive officeholders are elected every four years. *See* Del. Const. art. II. § 2; *id*. art. III, §§ 5, 19(a), 21. Therefore, under Delaware law, the applicable "election period" for incumbent candidates for these offices may be up to four years.

22.    Delaware regulations require third-party advertisement reports to be filed within "48 hours" after a qualifying expenditure is made if the expenditure is made "more than 30 days

before a primary or special election or 60 days before a general election," and within "24 hours" after the expenditure is made if the expenditure is made "30 days or less before a primary or special election or 60 days or less before an election." 15 Del. Admin. Code 100-9.1.5.

23.    Failure to file the required reports results in assessment of "a fine by the Commissioner of $50 for each day that such report is tardy." 15 Del. Admin. Code 100-10.1. If a tardy report is not filed or corrected within 30 days following either a determination by the Commissioner that the tardiness is not due to reasonable cause or the expiration of the appeal period, "then the Commissioner shall notify the Office of the Attorney General that the reporting party has failed to file such report." 15 Del. Admin. Code 100-10.3.

**Plaintiffs' Past and Future Activities**

24.    AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be advocates for the ideas, principles, and policies of a free and open society.

25.    AFPF engages in educational and advocacy work in many states across the country in pursuit of this mission. This education and advocacy includes communications through mechanisms that Delaware defines as "communications media." For example, a true and correct audio copy of a recent radio advertisement from Arizona is available on AFPF's website.[1] The production and distribution of this communication cost AFPF more than $500.

26.    AFPF intends to engage in similar work in Delaware on an ongoing basis, including within 30 days before the upcoming 2026 primary election and within 60 days of the upcoming 2026 general election. Specifically, AFPF intends to produce and distribute communications through mechanisms that Delaware defines as "communications media." Upon information and

---

[1] *AZ Proposition 211 Radio Advertisement*, AMS. FOR PROSPERITY FOUND. (Feb. 2026), https://americansforprosperityfoundation.org/wp-content/uploads/2026/02/AZProp211_60_Radio.mp3.

belief, the production and distribution of these communications will cost AFPF more than $500. Consistent with its federal tax status, AFPF's communications will discuss specific officeholders, including officeholders who are themselves candidates for election or reelection, in the context of governmental action and issues of public policy but will not advocate their election or defeat.

27.    AFP is a 501(c)(4) is a nonprofit organization that engages in broad-based grassroots outreach to advocate for long-term solutions to the country's biggest problems that prevent people from realizing their incredible potential. Its areas of focus include unsustainable government spending and debt, reforms to immigration and economic policy, and a host of other issues.

28.    AFP engages in issue advocacy work in many states across the country in pursuit of this mission. This advocacy includes communications through mechanisms that Delaware defines as "communications media." A true and correct copy of a recent example from Maine is attached hereto as Exhibit A. The production and distribution of this communication cost AFP more than $500.

29.    AFP intends to engage in similar work in Delaware on an ongoing basis, including within 30 days before the upcoming 2026 primary election and within 60 days of the upcoming 2026 general election, and subsequent elections. Specifically, AFP intends to produce and distribute communications through mechanisms that Delaware defines as "communications media." Upon information and belief, the production and distribution of these communications will cost AFP more than $500. Consistent with its federal tax status, these communications will discuss specific officeholders, including officeholders who are themselves candidates for election or reelection, in the context of governmental action and issues of public policy.

30.    Plaintiffs' communications are protected speech under the First and Fourteenth Amendments.

31.    However, upon information and belief, Plaintiffs' communications would fall within Delaware's definition of "electioneering communications," and therefore would be "third-party advertisements" subject to Delaware's disclosure requirements.

32.    Therefore, Plaintiffs would be required to file third-party advertisement reports, under penalty of perjury, that disclose the names and addresses of their donors who have contributed more than $100 in the aggregate during the applicable "election period."

33.    Between 2022 and 2025, thousands of donors contributed more than $100 to AFP and/or AFPF. The vast majority of these donors reside outside of Delaware, and none gave for the purpose of regulated communications in Delaware or in response to solicitations concerning AFP and AFPF's anticipated activity in Delaware. Yet, under Delaware law, Plaintiffs would be required to disclose the names and addresses of these donors in a third-party advertisement report.

34.    This compelled disclosure violates the First Amendment freedom of association and belief enjoyed by Plaintiffs and their supporters.

35.    Furthermore, Delaware's disclosure requirements will chill, or at the very least, create an unnecessary risk of chilling, the First Amendment activity of Plaintiffs and their donors.

36.    Plaintiffs and their donors have a reasonable fear that they will be the target of threats, harassment, or other retaliation if Plaintiffs are forced to disclose the names and addresses of their donors.

37.    Plaintiffs and their supporters have been subject to threats and harassment in the past, as the Supreme Court has recognized. *Bonta*, 594 U.S. at 617 (explaining that AFPF had

shown "that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence."); *see also id.* at 604.

38.    For example, at AFP's 2011 summit in Washington, D.C., hundreds of protesters gathered outside the event space and attempted to storm the building. The protest became violent, with some attendees physically accosted and injured. *See* Clare O'Connor, *Occupy the Koch Brothers: Violence, Injuries, and Arrests at DC Protest*, FORBES (Dec. 10, 2011 at 6:25 EST), http://www.forbes.com/sites/clareoconnor/2011/11/05/occupy-the-kochs-violent-clashes-injuries-and-arrests-at-protest-against-corporate-greed/. Additionally, in 2019, an AFP office in Fargo, North Dakota was vandalized because of AFP's support for free speech. *See* Rob Port, *This conservative group's Fargo office has been vandalized repeatedly since it was opened*, INFORUM (Nov. 29, 2019 at 3:15 CT), https://www.inforum.com/opinion/columns/port-this-conservative-groups-fargo-office-has-been-vandalized-repeatedly-since-it-was-opened.

39.    Two of Plaintiffs' founders are brothers Charles Koch and the late David Koch. Charles has faced extensive threats and attacks for his advocacy work, including his work and ties to AFPF. *See Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1056 (C.D. Cal. 2016) (recounting threats to Charles and David) (post-decision procedural history omitted).

40.    Donors whose associations with Plaintiffs are known to the public have received threats of physical harm and/or public harassment. For example, reporters have published a list of potential donors to Plaintiffs, resulting in individuals on the list being immediately harassed and their businesses boycotted.

41.    Other donors, supporters, and employees of AFP and AFPF have repeatedly faced public threats, harassment, and intimidation based on their support and affiliation for the organizations. *See Ams. for Prosperity Found.*, 182 F. Supp. 3d at 1055-56 (cataloging threats);

9

*see also Ams. for Prosperity v. Grewal*, 2019 WL 4855853, at *6 (D.N.J. Oct. 2, 2019) (describing Plaintiffs' evidence where "AFP itself and its donors have been subjected to harassment ranging from death threats to cyberattacks to violent protests at AFP events.").

42.    These threats and harassment have continued in recent years. For example, Plaintiffs and their employees have experienced consistent harassment and threats in Vermont from groups that disagree with Plaintiffs on economic policy initiatives, requiring Plaintiffs to hire security for their events. Legislators and their supporters have attempted many ways to stop Plaintiffs' operations in Northeastern states by introducing legislation targeting AFP. Both Vermont and Maine legislators singled out AFP as the reason they attempted to stop non-profits from advocating in their states.

43.    Plaintiffs therefore believe that both current and potential donors are fearful of having their names and addresses disclosed as supporters or donors to Plaintiffs.

44.    Accordingly, Plaintiffs vigorously protect the confidentiality of their donors. For example, Plaintiffs maintain donor information in a highly secure database, and access is restricted to individuals who have a need to know that information. The vast majority of donors require confidentiality as a condition of their giving to Plaintiffs.

45.    If, however, Plaintiffs are required to disclose the names and addresses of their donors, it is likely that potential donors will refuse to contribute, and current donors will cease to contribute, because they are too fearful of the reprisal they will face if their names and addresses are disclosed.

46.    Consequently, Delaware's disclosure requirements will chill, or at the very least create an unnecessary risk of chilling, Plaintiffs' and their donors' associational activity by discouraging individuals from associating with Plaintiffs, who are themselves engaged in protected

10

First Amendment activity. The disclosure requirements will also chill, or at the very least create an unnecessary risk of chilling, the protected speech of donors who forgo making contributions out of fear of reprisal.

47.     If, however, Plaintiffs do not file the required reports disclosing their donors, they will be subject to daily fines. Additionally, the Election Commissioner is required to notify the Attorney General of any failure to file required reports, which is a class A misdemeanor. *See* 15 Del. C. § 8043(c).

48.     Upon information and belief, Plaintiffs and other organizations face a credible threat that Delaware will enforce the disclosure requirements against them. For example, the state Election Commissioner has previously concluded that a political action committee was required to file a third-party advertisement report for an advertisement that referred to a candidate for State Treasurer aired during the 2018 election, but had failed to do so by the applicable deadline. *See* Exhibit B, "*Re: Request for Ruling on Simpler and Lavelle Campaign Finance Issues*," STATE OF DEL. DEP'T OF ELECTIONS, (Oct. 26, 2018), https://elections.delaware.gov/public/com_opinions/pdfs/AO2018-01%20LavelleSimpler.pdf. While the State Election Commissioner agreed "on a one-time basis . . . to waive the fines associated with the Foundation's tardy third-party reports" so long as they were accurate and complete, the Commissioner also warned that she would "not waive any fines for the Foundation for third-party advertisement reports that must be filed in the future." *Id*. at 4.

49.     Upon information and belief, Delaware has never disavowed enforcement of Delaware's disclosure requirements for Plaintiffs' planned conduct. To the contrary, Delaware has previously enforced the requirements, *see* Exhibit B, and rigorously defended the constitutionality of the statute, *see generally Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304 (3d Cir. 2015).

11

50.     Absent a court order enjoining enforcement of the law and declaring it unconstitutional, Plaintiffs will not publish communications in Delaware in the regulated periods predating the 2026 or subsequent elections for fear that Delaware will enforce its unconstitutional disclosure requirements.

51.     Consequently, Plaintiffs' speech is chilled because they fear a future enforcement action and punishment by Defendants for publishing covered communications without filing the required reports that disclose the names and addresses of their donors.

### COUNT I – FIRST AMENDMENT

52.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 to 51 as if set forth fully herein.

53.     The First Amendment to the United States Constitution applies to Delaware by virtue of the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652 (1925).

54.     The First Amendment prohibits the government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *Bonta*, 594 U.S. at 605-606. The Supreme Court has recognized that "the right to engage in activities protected by the First Amendment" includes "a corresponding right to associate with others." *Id*. at 606 (citation omitted).

55.     The Supreme Court has "held laws unconstitutional that require disclosure of membership lists for groups seeking anonymity" because "they ma[k]e group membership less attractive, raising the same First Amendment concerns about affecting the group's ability to express its message." *Rumsfeld v. FAIR*, 547 U.S. 47, 69 (2006). This protection applies with equal force to an organization's financial supporters. *Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976).

12

56.    "[C]ompelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of government action." *Patterson*, 357 U.S. at 462.

57.    The Supreme Court has thus held that compelled disclosure requirements are subject to "exacting scrutiny." *Buckley*, 424 U.S. at 93-94; *Bonta*, 594 U.S. at 608.

58.    That standard requires "that there be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,'" *Bonta*, 594 U.S. at 611 (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010)), "and that the disclosure requirement be narrowly tailored to the interest it promotes," *id*. (citing *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)). The narrow tailoring inquiry requires analysis of "the extent to which the burdens are unnecessary." *Id*.

59.    "Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly—'[b]ecause First Amendment freedoms need breathing space to survive.'" *Id*. at 609 (alternation in original) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

60.    "A critical feature of [the narrow tailoring] inquiry turns on whether the [government] 'seriously undertook to address' the problems it faces 'with less intrusive tools readily available to it.'" *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 404 (6th Cir. 2022) (Sutton, C.J.) (quoting *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)). "This means that, beyond proving a balanced relationship between the disclosure scheme's burdens and the government's interests, the government must 'demonstrate its need' for the disclosure regime 'in light of any less intrusive alternatives.'" *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1247 (10th Cir. 2023) (quoting *Bonta*, 594 U.S. at 613).

61.    Delaware's disclosure requirements require Plaintiffs to disclose the names and addresses of their donors who have contributed more than $100 in the aggregate during the

13

applicable "election period." The compelled disclosure of Plaintiffs' donors, as required by Delaware's disclosure requirements, burdens Plaintiffs' First Amendment right to association, triggering exacting scrutiny.

62.    Delaware's disclosure requirements set forth in 15 Del. C. § 8031 are not substantially related to a sufficiently important government interest, nor are they narrowly tailored to any interest they allegedly promote.

63.    The Supreme Court has identified the governmental interests that could survive exacting scrutiny as: "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek . . . office," "deter[ring] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "detect[ing] violations of the contribution limitations." *Buckley*, 424 U.S. at 66-68 (citations omitted).

64.    Delaware's disclosure requirements lack a substantial relation to any of these interests, and are not narrowly tailored to any of these interests.

65.    The only interest that could even potentially justify the disclosure requirements here is the informational interest, but that "simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995).

66.    Delaware cannot demonstrate that disclosing the names and addresses of Plaintiffs' donors across the country for an extended period of time actually provides voters with information that is relevant to their evaluation of candidates or "help[s] citizens make informed choices in the

14

political marketplace," *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 367 (2010) (citations omitted), or that it is narrowly tailored to that interest.[2]

67.     Under Delaware's disclosure requirements, Plaintiffs must disclose the names and addresses of all of their donors who have contributed more than $100 within the applicable "election period," regardless of whether these donors earmarked their donations for a specific candidate or purpose. Circuit courts around the country have identified a state's institution of "earmarking systems" and "opt out" provisions as methods of tailoring disclosure requirements to a state's informational interest. *See Wyo. Gun Owners*, 83 F.4th at 1248-49; *Gaspee Project v. Mederos*, 13 F.4th 79, 89 (1st Cir. 2021). Delaware lacks either option and cannot "demonstrate its need" for the burden of disclosing all of Plaintiffs' donors above $100 in light of these other "less intrusive alternatives." *Bonta*, 594 U.S. at 613.

68.     Delaware also cannot demonstrate that the applicable "election period[s]" are narrowly tailored to any informational interest. Those periods are defined by the election periods for "the candidate identified in such [third-party] advertisement[s]," 15 Del. C. § 8002(1l)(d), which equates to a four-year election period for incumbent statewide executive officeholders and state senators, *see* 15 Del. C. § 8002(1l)(a)(1). Compelling the disclosure of Plaintiffs' donors as far back as four years prior to an election provides little information of value to voters, as those donors may no longer support Plaintiffs or their mission, and are unlikely to have given for the

---

[2] The bill synopsis for the legislation enacting Delaware's disclosure requirements claimed that it was intended to "close a major loophole under existing law" "by requiring reports for electioneering communications—i.e., third party advertisements that refer to a clearly identified candidate and are publicly distributed within 30 days before a primary or special election, or 60 days before a general election," and that "[t]his requirement will provide crucial information to voters in the days before an election and 'help citizens make informed choices in the political marketplace.' *Citizens United v. FEC*, 130 S. Ct. 876 (2010)." H.B. 300, 146th Gen. Assemb. (Del. 2012), available at https://legis.delaware.gov/BillDetail/21575 (last visited Apr. 7, 2026).

purpose of any specific public communication or advocacy concerning any specific candidate, in Delaware or elsewhere.

69.     Delaware's interest here, whatever it may be, is weak, and it is apparent "[t]here is a dramatic mismatch" between those interests "and the disclosure regime . . . implemented in service of that end." *Id*. at 612. Delaware's disclosure requirement is therefore not narrowly tailored to any government interest.

70.     The government's interests also do not "reflect the seriousness of the actual burden" that Delaware's disclosure requirements impose on the First Amendment rights of Plaintiffs and their supporters. *Bonta*, 594 U.S. at 615 (quoting *Reed*, 561 U.S. at 196). Plaintiffs and their supporters have suffered from threats and harassment in the past, and donors will likely face similar retaliation in the future if their affiliation with Plaintiffs is disclosed. Delaware's disclosure requirements therefore will also chill, or at the very least create an unnecessary risk of chilling, the protected associational and speech activity of Plaintiffs' and their supporters.

71.     Delaware's disclosure requirements are overbroad and facially unconstitutional because they "fail[] exacting scrutiny in 'a substantial number of [their] applications . . . judged in relation to [their] plainly legitimate sweep.'" *Id*. at 618 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

72.     The "lack of tailoring to" Delaware's goals is "categorical—present in every case— as is the weakness of the State's interest . . ." *Id*. at 615. It is true in "every case" that Delaware's interests in the disclosure requirement is weak, that Delaware has not imposed "less intrusive alternatives," and that the disclosure requirements are not narrowly tailored to the state's interests. *See id*. at 613, 615.

73.     Delaware's disclosure requirements are triggered by relatively low expenditures on third-party advertisements ($500), and require the disclosure of donors who gave even less (more than $100 in the aggregate) as far back as four years and regardless of whether they were earmarked or specified for a specific candidate, communication, or any other purpose. Delaware's disclosure requirements do not create a mechanism for donors to "opt-out" of having their donations used for third-party advertisements and thereby avoid disclosure.

74.     Delaware's disclosure requirements create an "unnecessary risk of chilling" by "indiscriminately sweeping up the information of *every* major donor with reason to remain anonymous." *Bonta*, 594 U.S. at 616-17. This risk of chilling is even more serious here where the requirement does not just apply to "major" donors but "sweep[s] up" donors who have given more than $100 in the aggregate over a four-year period, and when ever-evolving technology permits "'anyone with access to a computer'" to "'compile a wealth of information about' anyone else" using their name and home address. *Id*.

75.     Moreover, Delaware's disclosure requirements are not narrowly tailored as applied to Plaintiffs, and therefore violate the First Amendment rights of Plaintiffs and their supporters.

76.     Plaintiffs intend to publish and distribute communications that will be considered "electioneering communications" in the regulated periods predating the 2026 and subsequent elections, communication that would require Plaintiffs to file "third-party advertisement reports" disclosing the names and addresses of their donors.

77.     However, unless and until a court enjoins the enforcement of the Delaware disclosure requirements, or they are otherwise repealed, Plaintiffs will not publish such communications in Delaware. Plaintiffs' speech will be chilled, as well as the activity of their donors, who fear they will face harassment and reprisals if their names and addresses are disclosed.

17

78.     Delaware's disclosure requirements infringe the First and Fourteenth Amendment rights to freedom of speech and freedom of association of Plaintiffs and their supporters, and are unconstitutional on their face and as applied to Plaintiffs.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully requests that judgment be entered in their favor and against the Defendants as follows:

A.     An order preliminarily enjoining the enforcement of the disclosure requirements for third-party advertisements at 15 Del. C. § 8031;

B.     An order permanently enjoining the enforcement of the disclosure requirements for third-party advertisements at 15 Del. C. § 8031;

C.     A declaration that the disclosure requirements for third-party advertisements at 15 Del. C. § 8031 violate the First and Fourteenth Amendments both on their face and as applied to Plaintiffs, and are therefore null and void in their entirety;

D.     An award to Plaintiffs of their reasonable attorneys' fees and costs;

E.     A grant to Plaintiffs of such additional or different relief as the Court deems just and proper.

DATED: April 17, 2026                         BAKER & HOSTETLER LLP

Allen J. Dickerson*                            */s/ Jeremy D. Anderson*
1050 Connecticut Ave., N.W., Suite 1110        Jeremy D. Anderson (No. 4515)
Washington, DC 20036-5403                      1201 North Market St., Suite 1407
(202) 861-1507                                 Wilmington, DE 19801-1147
adickerson@bakerlaw.com                        (302) 407-4224
                                               janderson@bakerlaw.com

Erika D. Prouty*
Robert J. Tucker*
Anna E. Croyts*                                *Attorneys for Plaintiffs*
200 Civil Center Dr., Suite 1200
Columbus, OH 43215-4138
(614) 228-1541
eprouty@bakerlaw.com

rtucker@bakerlaw.com
acroyts@bakerlaw.com

*Pro hac vice motions forthcoming*