# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMERICANS FOR PROSPERITY
FOUNDATION; AMERICANS FOR
PROSPERITY

          *Plaintiffs*,

    v.

ANTHONY ALBENCE, in his official
capacity as State Election Commissioner
for the State of Delaware,

KATHY JENNINGS, in her official
capacity as Attorney General of
the State of Delaware,

          *Defendants*.

Case No.

## DECLARATION OF ROSS CONNOLLY

I, Ross Connolly, declare as follows:

1. I am over the age of 18 and competent to make this declaration.

2. I am the Northeast Regional Director for Americans for Prosperity ("AFP") and for Americans for Prosperity Foundation ("AFPF"). I have been in these roles for three years and with the organizations in other roles for 13 years.

3. I am authorized to speak for AFP and AFPF regarding the information set forth in this declaration.

4. The statements in this declaration are based upon knowledge I have acquired in the performance of my official duties, through information provided to me in my official capacity by AFP and AFPF personnel, and by reviewing records maintained by AFP and AFPF during the ordinary course of business.

1

5.      AFP is a 501(c)(4) nonprofit organization that engages in broad-based grassroots outreach to advocate for long-term solutions to the country's biggest problems that prevent people from realizing their incredible potential, including  in the areas of unsustainable government spending and debt, reforms to immigration and economic policy, and a host of other issues.

6.      AFPF is a 501(c)(3) nonprofit organization that is committed to educating and training Americans to be advocates for the ideas, principles, and policies of a free and open society.

7.      AFP and AFPF fund their activities through donations from donors across the country.

8.      Consistent with their federal tax-exempt statuses, AFP engages in issue advocacy work, and AFPF engages in educational and advocacy work, in many states across the country in pursuit of their missions. This activity includes communications through various media forms, including but not limited to television, radio, mail, and the internet.

9.      A true and correct copy of a recent example of AFP's advocacy work in Maine is attached hereto as Exhibit A. The production and distribution of this communication cost AFP more than $500.

10.     A recent example of an AFPF radio communication that aired in Arizona can be found on AFPF's website. *See AZ Proposition 211 Radio Advertisement,* AMS. FOR PROSPERITY FOUND.     (Feb.     2026),     *https://americansforprosperityfoundation.org/wp-content/uploads/2026/02/AZProp211_60_Radio.mp3*. AFPF wishes to, and intends to, engage in similar discussions of issues of public policy in Delaware, including non-electoral reference to incumbent officeholders. The production and distribution of this communication cost AFPF more than $500.

11.    As Northeast Regional Director, I am familiar with AFP and AFPF's past, present, and planned future advocacy efforts in Delaware, Maine, New Hampshire, and other states in the Northeast, as well as states in other regions of the country.

12.    AFP and AFPF intend to engage in issue advocacy and educational work in Delaware. Because this work will be ongoing, it will necessarily occur in advance of the 2026 and subsequent primary and general elections, including within 30 days before the upcoming 2026 primary election and within 60 days of the upcoming 2026 general election. Specifically, AFP and AFPF intend to produce and distribute communications through various media forms, including but not limited to television, radio, mail, and the internet.

13.    Based on my professional experience in these roles with AFP and AFPF, the production and distribution of these communications will cost AFP and AFPF more than $500.

14.    These communications will discuss specific officeholders, including officeholders who are themselves candidates for election or reelection, in the context of governmental action and issues of public policy.

15.    It is my understanding, however, that if AFP and AFPF were to produce and distribute these communications in Delaware, they would be required to file third-party advertisement reports that disclose the names and addresses of all their donors across the country who have contributed more than $100 in the aggregate during the applicable "election period," which could be several years long.

16.    I have reviewed AFP and AFPF's donor records from 2022 to the present and confirmed that there are donors who have contributed more than $100 to AFP and AFPF whose names and addresses would be required to be disclosed in a third-party advertisement report. For example, there were 590 donors who contributed between $100.01 and $199.99 from 2022 to 2025.

3

There were over 1,000 more who gave between $200.00 and $999.99 during the same time periods. At least four of the  donors who gave to AFP and/or AFPF from 2022 to 2025 reside in the state of Delaware, and at least two of them gave over $100. But, to my knowledge, none of them gave for the purpose of regulated communications in Delaware or in response to solicitations concerning AFP and AFPF's anticipated activity in Delaware.

17.     It is my understanding that both current and potential future donors to our organizations are fearful of having their names and addresses disclosed as donors to or supporters of AFP and/or AFPF.

18.     AFP, AFPF, their employees, supporters, and donors have been subject to threats and harassment in the past.

19.     For example, in Vermont we have experienced consistent harassment and threats from groups that disagreed with us on economic policy initiatives to the point where we had to hire security for our events.

20.     In Fargo, North Dakota, an AFP office was vandalized and spray painted because of AFP's support for free speech.  *See* Rob Port, *This conservative group's Fargo office has been vandalized repeatedly since it was opened*, InForum.com (Nov. 29, 2019), https://www.inforum.com/opinion/columns/port-this-conservative-groups-fargo-office-has-been-vandalized-repeatedly-since-it-was-opened.

21.     Legislators and their supporters have attempted many ways to impede our operations in Northeastern states by introducing legislation targeting AFP.  Both Vermont and Maine legislators singled out AFP as the reason they attempted to impede non-profits from advocating in their states. *See* Rep. Laura Sibilia, *Updated: Addressing the Inconsistencies in AFP and VTGOP's Stance on Climate and Energy Policies*, VT. STATE REPRESENTATIVE LAURA

4

SIBILIA (Mar. 5, 2025), https://laurasibiliavt.com/2025/03/05/sibilia-addressing-the-inconsistencies-in-afp-and-vtgops-stance-on-energy-policies/; Calvin Cutler, *Vermont lawmakers seek transparency for outside political spending*, WCAZ3 (Dec. 4, 2025, at 04:43 EST) https://www.wcax.com/2025/12/04/vermont-lawmakers-seek-transparency-outside-political-spending/.

22.　AFP and AFPF staff have repeatedly provided federal courts with firsthand evidence of threats to their business locations, business operations, staff, grassroots activists, and donors. *See, e.g.*, *Americans for Prosperity v. Grewal*, 2019 WL 4855853, at *6 (D.N.J. Oct. 2, 2019) (recognizing "AFP itself and its donors have been subjected to harassment ranging from death threats to cyberattacks to violent protests at AFP events") (citing Decl. of Erica Jedynak (ECF No. 3-5)); Decl. of Emily Seidel at ¶¶ 9-20 (ECF No. 3-4), *Americans for Prosperity v. Grewal*, No. 19-14228 (D.N.J. filed June 25, 2019) (outlining threats and confidentiality measures taken in response); *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1055–56 (C.D. Cal. 2016) (cataloging threats, including to "death threats," "slit his throat," "taking pictures of employees' license pla[t]es," "multiple slurs and spit in Mr. Hilgemann's face," "several hundred protestors surrounded the tent and used knives and box-cutters to cut at the ropes of tent, eventually causing the large tent to collapse with AFP supporters still inside.").

23.　Due to these threats and harassment, AFP and AFPF take donor privacy very seriously and have instituted a number of measures to protect the confidentiality of their donors. For example, AFP and AFPF maintain donor information in a highly-secure database, and access is restricted to individuals who have a need to know that information. It is my understanding that the vast majority of donors require confidentiality as part of their giving.

5

24.     I believe that if AFP and AFPF are required to disclose the names and addresses of our donors, it is likely that potential donors will refuse to contribute, and current donors will cease to contribute, to Plaintiffs because they are too fearful of the reprisal they will face if their names and addresses are disclosed.

25.     If AFP and AFPF do not file the required reports disclosing their donors, it is my understanding that they will be subject to fines and other enforcement actions by Delaware state officials.

26.     Therefore, because of the onerous nature of these laws, AFP and AFPF will not publish communications in Delaware while the disclosure requirements are in effect.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: April 17, 2026

Signed by:

*Ross Connolly*

06498F323D604DE

Ross Connolly

6

# EXHIBIT A




